Matter of Council of the City of N.Y. v Department of City Planning of the City of N.Y. (2020 NY Slip Op 04812)





Matter of Council of the City of N.Y. v Department of City Planning of the City of N.Y.


2020 NY Slip Op 04812


Decided on August 27, 2020


Appellate Division, First Department


Gesmer, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 27, 2020
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Sallie Manzanet-Daniels,J.P.
Angela M. Mazzarelli
Ellen Gesmer
Anil C. Singh,JJ.


452302/18 11842 

[*1]In re Council of the City of New York, et al., Petitioners-Respondents,
v
The Department of City Planning of the City of New York, et al., Respondents-Appellants.
Two Bridges Associates, LP, et al., Intervenor Respondents-Appellants,
v
The Municipal Art Society of New York, Amicus Curiae.



Respondents appeal from the order of Supreme Court, New York County (Arthur F. Engoron, J.), entered August 1, 2019, which granted the petition, among other things, to vacate determinations of respondent New York City Planning Commission, dated December 5, 2018, approving applications to construct certain new buildings.




James E. Johnson, Corporation Counsel, New York (Jamison Davies and Devin Slack of counsel), for The Department of City Planning of the City of New York, New York City Planning Commission, New York City Department of Building, The City of New York and Marisa Lago, appellants.
Fried, Frank, Harris, Shriver & Jacobson LLP, New York (Janice Mac Avoy of counsel), for Two Bridges Associates, LP, LE1 Sub LLC, and Cherry Street Owner, LLC, appellants.
Emery Celli Brinckerhoff & Abady LLP, New York (Debra L. Greenberger, Andrew G. Celli, Jr. and David B. Berman of [*2]counsel), for The Council of the City of New York and Adele Bartlett, New York, for Manhattan Borough President Gale A. Brewer, respondent.
Charles Weinstock, New York, and
Menapace Fellow in Urban Land Use Law, New York (Rachel Mazur of counsel), for amicus curiae.



GESMER, J.


In this proceeding, petitioners Manhattan Borough President Gale A. Brewer and the Council of the City of New York challenge a decision by respondent New York City Planning Commission (CPC) to approve an application by the intervenor respondents (collectively, the Developers) for permission to build four large towers in the Two Bridges neighborhood. The motion judge granted the petition. However, we find, as a matter of law, that the buildings described in the applications did not conflict with applicable zoning requirements and that, therefore, the CPC's approval of the applications has a rational basis and is not contrary to law (see Matter of Community United to Protect Theodore Roosevelt Park v City of New York, 171 AD3d 567 [1st Dept 2019]). Specifically, we find no error in CPC's determination that the project did not require a special permit, and was therefore not subject to the Uniform Land Use Review Procedure (ULURP). Accordingly, Supreme Court's order should be reversed.
Ordinarily, land owners in New York City may build on their property at will, provided that the construction complies with applicable provisions of the New York City Zoning Resolution (ZR)[FN1] and that the Department of Buildings issues any necessary permits (see Matter of Neville v Koch, 79 NY2d 416, 425 [1992]).
Respondents the CPC, a body whose 12 members and chair are appointed by elected officials,[FN2] is "responsible for the conduct of planning relating to the orderly growth, improvement and future development of the city, including adequate and appropriate resources for the housing, business, industry, transportation, distribution, recreation, culture, comfort, convenience, health and welfare of its population" (NY City Charter § 192[d]).
The ZR authorizes the CPC, as relevant here, to issue special permits to waive, vary or [*3]modify certain ZR provisions relevant to large-scale residential districts (LSRD)[FN3]. The ZR provides for "greater flexibility" within LSRDs "involving several zoning lots but planned as a unit" because "the district regulations may impose unnecessary rigidities and thereby prevent achievement of the best possible site plan within the overall density and bulk controls . . . " (ZR § 78-01). The ZR requires a special permit to modify a site plan within an LSRD only if the plan requires a waiver, variation or modification of a particular ZR provision (see ZR §§ 78-241 [waterfront and related commercial use regulations]; 78-242 [regulation of location of commercial uses]; 78-312 [bulk regulations]; 78-42 [commercial parking regulations]).
In this case, the CPC approved modifications of the site plan and zoning calculations for portions of certain parcels within the Two Bridges LSRD which will permit the construction of four residential and mixed-use towers, each of which will be between 63 and 80 stories tall. The Two Bridges LSRD is bounded by Cherry Street to the north, South Street to the south, mid-block between Pike Slip and Rutgers Street to the west, and mid-block between Clinton and Montgomery Streets to the east. It consists of six parcels, held by various owners, which are designated as 4A, 4B, 5, 6A, 6B, and 7, running from west to east.
Although the proposed towers are more than twice the height of surrounding buildings, it is undisputed that they do not violate any applicable zoning regulation.
Petitioners contend that the Developers should have been required to obtain a special permit, which would have in turn triggered ULURP (NY City Charter § 197-c[a][12])[FN4]. ULURP requires public hearings, and, in the case of special permits, review by the City Council, which may override the Mayor's decision by a two-thirds majority vote (NY City Charter §§ 197-c, 197-d).
Prior to the application to modify the site plan and zoning calculations for parcels 4A/4B, 5, and 6A at issue in this case, four special permits had been issued in connection with building projects in the Two Bridges LSRD [FN5]. In the first, in 1972, which appears to represent the earliest documented recognition of the Two Bridges LSRD,[FN6] the CPC approved an application to construct a federally subsidized public housing project within parcel 7, which was then designated an urban renewal area pursuant to the Urban Renewal Law (General Municipal Law § [*4]504)[FN7]. Pursuant to ZR § 78-312(d), the special permit allowed "the location of buildings without regard for the height and setback regulations which would otherwise apply along a portion of South Street, on the periphery of the development." That permit was issued before ULURP was enacted in 1975.
In 1977, the CPC issued two special permits for construction of a housing project on parcel 5, which required modifications of the ZR. Specifically, the special permits (1) modified minimum spacing requirements between buildings pursuant to ZR § 78-312(f); and (2) allowed "variations in the front height and setback regulations which would otherwise apply on the periphery of the development" pursuant to ZR § 78-312(d). The 1977 special permits were granted after ULURP review.
Finally, in 1995, the CPC issued a special permit for construction on parcel 4B, west of Rutgers Slip between Cherry and South Streets, of a 21-story mixed-use building next to a one-story commercial structure. The application included a site plan for the whole LSRD which showed blank rectangles at the locations of the empty lots where the four towers that are the subject of the application now on appeal are proposed to be built. Following ULURP review, the CPC issued the 1995 special permit, pursuant to ZR § 78-312(f), which modified the minimum spacing requirements between the proposed mixed-use building and the commercial building from the 40 feet that would otherwise apply to allow for a 30 foot corridor. It was issued on similar conditions to those imposed on the three earlier special permits, including:
(1) that "[t]he property that is the subject of this application (C 950078 ZSM) shall be developed in size and arrangement substantially in accordance with the dimensions, specifications and zoning computations indicated" on drawings designated A4 and A6 and submitted with the application;[FN8]
(2) that the "development shall conform to all applicable provisions of the Zoning Resolution, except for the modifications specifically granted in this resolution and shown on the plan listed above which has been filed with this application. All zoning computations are subject toúverification and approval by the New York City Department of Buildings"; and
(3) that the "development shall conform to all applicable laws and regulations relating to its construction, operation and maintenance."
In 2016, the Developers submitted the applications that are the subject of this appeal. They sought to modify the site plan and zoning calculations for parcels 4A, 4B, 5 and 6A to permit construction of the four new towers. The tallest of these, an 80-story tower proposed to be built on parcel 4A/4B, would cantilever above the existing neighboring 10-story senior residence and require the relocation of 19 residents whose apartments would be rendered windowless by the new construction. Nevertheless, because the Two Bridges LSRD is in a C6-4 zone, the height of the proposed towers and the resulting increases in bulk and density comply with applicable ZR provisions. Accordingly, the Developers' proposed changes to the site plan [*5]and zoning calculations do not require a waiver, variation or modification of any applicable ZR provision that would require a special permit (ZR § 78-312), and their applications do not seek a new special permit or modification of any existing special permit. As the CPC Chair later noted with regard to the CPC's approval of the applications, the CPC considered the proposed modifications to be "minor" for this reason.
Although the applications did not require a special permit and were thus not subject to ULURP, the proposed development was subject to other forms of review, which required public hearings. In particular, it was subject to the State Environmental Quality Review Act (SEQRA) and its local corollary, the City Environmental Quality Review (CEQR).
In addition, while the SEQRA/CEQR process was pending, but prior to issuance of the Final Environmental Impact Statement (FEIS), the DCP submitted the Developers' applications to the local Community Board on June 25, 2018, in accordance with procedures for non-ULURP matters. On September 28, 2018, after holding public hearings, Community Board 3 recommended disapproval of the applications, and further recommended that the Developers be required to apply for a special permit and undergo ULURP because of the project's "massive scale" and potential adverse environmental impacts.
On June 22, 2018, the DCP published a Notice of Completion of the Draft Environmental Impact Statement (DEIS). The CPC accepted public comments on the DEIS both at a public hearing on October 17, 2018, and throughout the comment period ending on October 29, 2018. On November 23, 2018, the FEIS was issued pursuant to SEQRA/CEQR, incorporating and addressing the substantive comments received. It concluded that the proposed development implicated "significant adverse impacts," including on open space, shadows, traffic, and public elementary schools and child care facilities. Therefore, the FEIS recommended certain mitigation measures, including establishment of two new public open spaces, improvement to existing parks, implementation of traffic signal timing and other traffic adjustment measures, and payments for additional public elementary school and child care seats.
On December 5, 2018, the CPC voted seven to three to adopt the FEIS and to approve the Developers' applications.
On December 7, 2018, petitioners commenced a hybrid article 78 and CPLR 3001 action seeking: (1) to annul the CPC's approval of the applications; (2) injunctive relief; and (3) a declaratory judgment that the application is subject to ULURP.
By decision and order entered on August 1, 2019, Supreme Court granted the petition, vacating the CPC's approvals and directing that the applications undergo ULURP. It further enjoined the municipal respondents from sending the approvals to the Department of Buildings (DOB), enjoined the DOB from issuing permits for the proposed projects, and enjoined the Developers from performing any construction on the proposed projects prior to completion of ULURP.
The motion court acknowledged that the Developers did not seek a special permit because the proposed changes to the site plan do not require a waiver of any applicable ZR provision. The court nevertheless determined that a special permit and ULURP are required because the proposed towers are a "huge" change to a site plan that was previously modified through special permits. The court did not cite to any statute, regulation or case law to support its conclusion. Rather, it reasoned that, "if a special permit is necessary to create an LSRD, a special permit is necessary to transmogrify it." It further looked, "by way of analogy" to Charter § 374(b), which governs concessions for private use of public property, and 62 RCNY § 2-06(g)(5)(ii), which governs modifications to pending ULURP applications, and determined, based on those analogies, that the proposed changes are "major," rather than "minor," and therefore require submission of new applications seeking a special permit.
Respondents appealed. We now find that the CPC's approvals of the applications were [*6]"rationally based in the record and not contrary to law" (Matter of Edgewater Apts., Inc. v New York City Planning Commn., 177 AD3d 576, 576 [1st Dept 2019]), since the provision requiring ULURP where a project requires a special permit (see NY City Charter § 197-c[a][4]) is inapplicable to the proposed buildings, which undisputedly do not require any waivers from any provisions of the Zoning Resolution (see Zoning Resolution § 78-312).
In reaching this result, we are mindful of petitioners' concerns that their constituents have had limited input on the proposed development's potential effects on their neighborhood, including increased density, reduced open space and the construction of a large number of luxury residences in what has been a primarily working class neighborhood of low to medium rise buildings. However, existing law simply does not support the result petitioners seek.
Petitioners could have taken steps to amend the ZR to prohibit buildings of this scale in the area, and/or to amend ULURP to add to the categories of land use actions requiring review, through legislation and/or referendum (see NY City Charter §§ 200, 201 [amendment to ZR]; 38[16]; 197-c[a][12] [amendment to ULURP]). In addition, petitioners could have taken steps before expiration of the Two Bridges Urban Renewal Plan by its own terms in 2007 to amend the ZR to include the Urban Renewal Plan's greater restrictions, including a preference for low to medium rise buildings. Petitioners could have also sought to change the zoning classification of the Two Bridges neighborhood. Having failed to do so, petitioners cannot seek a remedy in the courts.[FN9]
Petitioners' arguments on appeal that ULURP applies lack merit. First, petitioners argue that a new special permit and ULURP are required because, in approving the applications, the CPC improperly relied on 62 RCNY 2-06(g)(5)(ii). Supreme Court correctly held that that provision does not apply here since it only applies to modifications to a site plan proposed by the City Council after completion of ULURP because the modification meets one of the statutory requirements for ULURP, "such as zoning or special permit" (62 RCNY 2-06[g][5][ii][A]).
It is true that 62 RCNY 2-06(g)(5)(ii) was discussed in correspondence between the CPC and some of petitioners that preceded the CPC's approval of the applications. However, that does not require a reversal of CPC's action, since the final approvals are not based on that provision (see Matter of National Fuel Gas Distrib. Corp. v Public Serv. Commn. of the State of N.Y., 16 NY3d 360, 368 [2011] [in deciding a challenge to a decision by an administrative agency that it is authorized to make, courts "must judge the propriety of such action solely by the grounds invoked by the agency"] [internal quotation marks omitted]).
Moreover, the description in the applications and their approvals of the requested site plan modifications as "minor," rather than "major" does not establish that the approvals were [*7]based on 62 RCNY 2-06(g)(5)(ii)[FN10]. As the CPC Chair noted with regard to the CPC's vote,
"[w]hile the proposed developments are not minor in scale, they are considered minor modifications to the existing large-scale development, since the buildings would comply with the underlying zoning district and don't require any zoning actions that are subject to ULURP. As a straightforward legal matter, the Commission can't require a ULURP unless authorized to do so by the City Charter or the Zoning Resolution."
Accordingly, the use of the word "minor" in the approvals was not intended to reference 62 RCNY 2-06(g)(5)(ii).
Next, petitioners argue that the current applications to modify the site plan are in fact requests to modify the 1995 special permit, in part because petitioners claim that the site plan submitted in connection with the 1995 special permit was the "operative site plan" at the time that the Developers submitted the applications that are the subject of this appeal [FN11]. This argument fails. Petitioners rely on the conditional language of the grant of the earlier special permit, which required that the property "be developed in size and arrangement substantially in accordance with the dimensions, specifications and zoning computations indicated" on drawings A4 and A6 submitted with the application. While petitioners characterize this language as applying to the entirety of the Two Bridges LSRD, the beginning of that sentence in the 1995 special permit is "the property that is the subject of this application (C 950078 ZSM)." The drawing referred to in the parentheses is drawing A6, and depicts only the 21-story mixed use building and adjacent single story commercial structure on parcel 4B west of Rutgers Slip between Cherry and South Streets that were the subject of the 1995 application. Accordingly, the language relied on by petitioners refers only to development of those structures.
Furthermore, the 1995 special permit modified the minimum spacing requirements between the two structures that were the subject of that application. The applications that are the subject of this appeal do not seek any change in minimum spacing requirements or to any other provision of the ZR, and do not seek to modify the 1995 special permit with regard to spacing requirements. Accordingly, petitioners' claim that granting the current applications requires a modification of the 1995 special permit is incorrect.
Third, petitioners argue that virtually every change to the site plan of a LSRD within which special permits have ever been issued requires a new special permit. They rely on the ZR definition of a LSRD as being an area that "has been or is to be developed as a unit" (ZR § 12-10), and on the requirement that applicants for special permits submit a copy of the site plan showing the entire LSRD as part of their application (see ZR § 74-20). However, neither the definition of a LSRD nor the application requirements nor any other ZR provision authorizes the [*8]CPC to issue a special permit in connection with approval of a modification to a site plan in the absence of a specific conflict with applicable ZR provisions.
Rather, the ZR authorizes the CPC to issue special permits in the enumerated categories only where a waiver or modification of particular ZR provisions is necessary. It is undisputed that none of those categories applies here. The CPC reviewed the applications and the prior special permits and determined that no new special permit was or could be required under any applicable ZR provision. "We accord deference to the Commission's rational" interpretation of the ZR (Edgewater Apartments, Inc. v New York City Planning Commn., 177 AD3d at 576). Accepting petitioners' argument that a special permit is nevertheless required "would result in the judicial enactment of a new restriction . . . not found in the Zoning Resolution" (Matter of New York Botanical Garden v Board of Stds. & Appeals of City of N.Y., 91 NY2d 413, 422 [1998]).
Furthermore, the history of the Two Bridges LSRD site plan, which has been modified at least six times since 1973 without the issuance of a special permit, negates petitioners' claim that, once a special permit has been issued, a new special permit and ULURP are required for further modifications to a LSRD site plan, even in the absence of a conflict with applicable ZR provisions.
We have considered petitioners' remaining arguments and find them unavailing.
Accordingly, the order of Supreme Court, New York County (Arthur F. Engoron, J.), entered August 1, 2019, which granted the petition, among other things, to vacate determinations of respondent New York City Planning Commission, dated December 5, 2018, approving applications to construct certain new buildings, should be reversed, on the law, without costs, the petition denied, and the proceeding brought pursuant to CPLR article 78 dismissed.
All Concur.
Order, Supreme Court, New York County (Arthur F. Engoron, J.), entered August 1, 2019, reversed, on the law, without costs, the petition denied, and the proceeding brought pursuant to CPLR article 78 dismissed.
Opinion by Gesmer, J. All concur.
Manzanet-Daniels, J.P., Mazzarelli, Gesmer, Singh, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: AUGUST 27, 2020
CLERK



Footnotes

Footnote 1:The ZR establishes the zoning districts and regulations governing land use and development within New York City, including requirements for building height and bulk, open spaces, population density, and permissible residential, commercial, manufacturing, and other uses within each zoning district (ZR § 11-01 et seq.).

Footnote 2:The City Charter provides that the Mayor shall appoint the chair and six of the 12 members. The remaining six members are appointed, one each, by the Public Advocate and each of the five Borough Presidents. CPC members "shall be chosen for their independence, integrity and civic commitment," and are appointed with the advice and consent of the City Council (NY City Charter § 192[a]).

Footnote 3:The ZR defines a LSRD as containing one or more buildings on one zoning lot or multiple contiguous lots (including those separated by a street or intersection) "used predominantly for residential uses," with an area of at least 1.5 acres and at least three buildings or at least three acres and at least 500 dwelling units, which was or will be "developed as a unit" (ZR § 12-10).

Footnote 4:An application for a special permit is the only one of the 12 categories of land use applications which trigger ULURP (NY City Charter § 197-c[a][12]) that is invoked by petitioners in this case.

Footnote 5:The CPC has also issued "authorizations" within the Two Bridges LSRD, as permitted by the ZR. Petitioners concede that authorizations do not require ULURP.

Footnote 6:A LSRD exists when an area meets the definition set out in the ZR. No particular procedure is necessary to establish a LSRD (see ZR § 12-10). 

Footnote 7:The 1967 Urban Renewal Plan expired by its own terms in 2007, with the result that its requirements, including a preference for low to medium rise buildings, no longer apply.

Footnote 8:Drawings A4 and A6 submitted with the 1995 application show only the property that was the subject of the application, located west of Rutgers Street between Cherry Street to the north and South Street to the south. They do not show the entire area of the Two Bridges LSRD, which includes several additional blocks east of Rutgers Street running between Cherry and South Streets.

Footnote 9:It appears that this sequence of events helped to inspire legislation passed by the City Council in 2018 which requires notice of the expiration of an urban renewal plan to the relevant Borough President, Council Member and Community Board. Extension of an urban renewal plan would prevent approval of development, like that at issue here, which is consistent with applicable ZR provisions but inconsistent with the expired urban renewal plan (NY City Charter § 1806[2]; see also Committee Report of the Land Use Division at 4 [Dec. 7, 2017], available at https://perma.cc/2M7QUUXL at 6 [last accessed August 9, 2020]).

Footnote 10: 62 RCNY 2-06(g)(5)(ii)(A) provides that the CPC, after ULURP and receipt of the City Council's proposed modifications to the CPC's prior approval of a land use action, shall determine, inter alia, whether the proposed modification "alters conditions or major elements of a site plan in actions (such as a zoning special permit) which require the approval or limitation of these elements" (emphasis added).

Footnote 11:The municipal respondents counter that the operative site plan is the one approved by the CPC in 2012, which approved construction of a hospice facility that has never been built.